# F. J. CROSS *v.* THE HAWAIIAN SUGAR COMPANY.
## a Corporation.

### ORIGINAL.

SUBMITTED MARCH 28, 1900.     DECIDED JUNE 20, 1900.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE PERRY IN PLACE OF JUDD, C.J., ABSENT.

A grant of the right to "take and use," for certain demised premises and for certain purposes, all the water in certain rivers outside of the demised premises, and to enter upon such outside premises and construct "such dams or other works" as may be necessary in order to "obtain and use such water" for said purposes is held, under all the circumstances of the case and the other language in the lease, more fully set forth in the opinion, to carry the right to divert the water for use on the demised premises, but not the right to erect works on such outside premises for the purpose of

generating electricity by means of the water power, even though
for the purpose of conducting the electricity so generated to the
demised premises for use thereon.

OPINION OF THE COURT BY CIRCUIT JUDGE PERRY.

The questions at issue between the parties in this case have
been submitted to this court for decision upon an agreed state-
ment of facts, in accordance with the provisions of the statute.

From that statement it appears that on October 24, 1889,
Gay & Robinson, a copartnership, executed a lease of certain
lands situate on the Island of Kauai to one W. R. Watson for
the term of 28 years as to some of such lands and .50 years as to
the remainder; that thereafter Watson assigned said lease to the
defendant corporation and that defendant by virtue of said as-
signment succeeded to and now holds all the rights, powers and
privileges of Watson under said lease. The demised lands are
described in the lease by metes and bounds, "reserving to the
lessors the exclusive right of pasturage upon all such lands
within the demised premises as shall not have been fenced in by
the lessees for plantation lands and so long as the same shall
remain unfenced."

The lease also contains the following provisions:

"And it is hereby further declared and agreed that the lessee
during said term of fifty years and subject to the conditions
hereinafter expressed, may take and use all the water in and of
the Koula and Hanapepe and Makaweli rivers for irrigating
cane and for fluming and for mill and plantation purposes, but
only for the demised premises and for said purposes may enter
upon the lands of the lessors and construct such dams or other
works as may be necessary in order to obtain and use such water
and on condition and always provided that the lessee shall at no
time and in no wise thereby abridge or interfere with the use
or right of water for irrigation which now is or heretofore has
been enjoyed by land holders or used for irrigation by the les-
sors in Hanapepe or Makaweli lands or valleys or in any wise
to interfere with the rights of others and also that such use by the
lessors be restricted within such limits as shall be authorized by
said Crown land leases wherever the same apply thereto. And

also that if the lessee shall think fit to take and use the water of the said Makaweli river before taking the water of the Koula river he shall be at liberty to do so, but if he shall do so he shall not take or use the water from the Koula river unless within six years after he shall have commenced making sugar on the demised premises. And also that the lessors shall be at liberty to have free of charge a supply of water for their domestic and garden use through two two-inch pipes to be laid by them from the nearest mutually convenient points of any pipes or ditches in which the lessee may take water from either or both of said Koula and Makaweli rivers. And also that the lessors shall be entitled to receive from the lessee free of charge for irrigation and for the domestic use of their plantation laborers such proportion of all the water available to the lessee for the time being as the area of the lessors' cane fields shall bear to the area of the lessee's cane fields requiring irrigation. And no water to which the lessee shall be entitled by virtue of these presents shall be used by the lessee for any but plantation purposes. And also that if for the period of two consecutive years at any time or times after the lessee shall begin and continue making sugar as aforesaid the lessors shall not have at the least one hundred acres of plant and or first rattoon cane under cultivation out of the said 600 acres of land or at their option shall for such two consecutive years omit or fail to plant and cultivate each year at least fifty acres of cane therein then and in such case and thereafter all of the said 600 acres shall be at the disposal of the lessee for plantation use. Provided however that at any time until the end of the further period of two years from said two years first above named the lessors may if they shall so elect and give written notice of such election to the lessee have and retain the full use of all of said 600 acres on paying to the lessee the sum of six hundred dollars ($600) a year for each of such years during which they shall not have such 100 acres of plant cane and or first rattoons under cultivation or shall not have planted and cultivated fifty acres as aforesaid. And also that the lessee shall not be obliged in any case to supply the lessors with water to irrigate more than 400 acres of cane in any one year. It being agreed however that the lessors may use the water so furnished upon said 600 acre tract or partially or wholly upon other lands of the lessors not herein demised to the lessee and that all cane grown by the lessors with water so furnished them shall be delivered to the lessee for grinding in the manner

hereinafter set forth. But a failure by the lessee to supply the lessors with sufficient water for irrigating the lessors' cane shall always be a sufficient excuse for their failure to plant and cultivate as aforesaid. And the lessors hereby further covenant with the lessee that at any time before the end of five years after the lessee shall have offered and agreed to execute these presents, the lessors will accept a surrender of the demised premises and that in such case no rental will be required of the lessee. And the lessee hereby covenants with the lessors that if by the end of said five years he shall not have commenced to make sugar on the demised premises, he will pay to the lessors the sum of five thousand dollars a year as rental for the demised premises in semi-annual payments of twenty-five hundred dollars each for each year thereafter not exceeding two years and after the same rate for any portion of a year until he shall begin making such sugar. And that in any case the lessee will not enclose the demised lands before commencing the construction of one or the other main water leads. And also that if by the end of the further period of two years following said first above named five years, the lessee shall not have begun to make such sugar, then this lease and the premises thereby demised shall forthwith be surrendered to the lessors. But it is agreed that upon such surrender other than at the end of said term of fifty years as herein mentioned, the lessee shall be at liberty to remove from the demised premises all buildings and houses, mills and machinery but not remove therefrom or otherwise dispose of any standing fences, wharf fixtures or mooring buoys, flumes or water piping thereon. And it is also hereby agreed that the lessors shall not be held liable in damages for any trespass or injury by animals upon any unfenced lands of the lessee, meaning thereby a fence which is not less than four and one-half feet high and reasonably strong and secure against trespass by animals. And it is agreed that the lessee shall not be obliged to fence the one hundred yards space reserved, but he shall at all times and at his own expense maintain good and sufficient gates at Mahinauli and Hanapepe whereby the lessors may have free access to said reserved space. And also that no fishing rights and no rights outside of the demised premises other than herein granted are hereby secured to the lessee. And also that the expression "Plantation Lands" herein used shall be deemed to mean all lands which the lessee shall have fenced.

                *        *        *        *        *        *

"And the lessee shall always have the right of way for and access to his piping, ditches, flumes and tramways over all the lessors' lands excepting however the present fenced portion of the Kekupua valley lying mauka of the Government road from Kaumeke spring to Akia having due regard however to the rights and conveniences of the lessors.

  &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

"And that the lessors may have five watering places along the line of the lessee's main water lead for watering the live stock of the lessors, one on the Nonopahu, one on the Moomuku ridge, one on the Aaka ridge, one at Manienieula and one also on the Kukumu ridge as said main water lead is completed across said ridges respectively, such watering places to be so arranged as to be convenient of access for said stocks."

The defendant has under the lease used, as the necessity of its plantation demanded, for plantation purposes, the lands demised and some of the waters referred to in the lease, and has used and still uses the power of the water conducted upon the demised lands from the Koula river to generate electricity for use in its mill; but it has not at any time used the power of the water as it flows in the bed of the Koula river, nor did it, prior to April 21, 1899, notify either the plaintiff or Gay & Robinson of any claim on its part to such power.

On July 1, 1899, Gay & Robinson executed a lease to the plaintiff for the term of 20 years of all their right, title and interest in and to the power of the falling and running water in the Koula Valley above the junction of the Paliemo and Manawai branches of the Koula river,—expressly excepting all rights acquired by the Hawaiian Sugar Company under the lease first above referred to—for the sole purpose of creating and developing electrical energy or power therefrom and transmitting said power to such place or places as may be desired. This lease to plaintiff further contains an express grant of "the right to construct and maintain on the lands of the said parties of the first part within the Paliemo and Manawai branches of said Koula Valley, for said term, such buildings, foundations and superstructures for machinery and appurtenances as may be

necessary to obtain and use said water power for the purposes aforesaid, but not to interfere with the rights of other persons therein; together with the right of way over the lands controlled by the parties of the first part from the Government road overlooking Hanapepe Valley at Kano along the west side of said Kano land up and to the head of the Koula Valley, but only so far as it shall be necessary for the party of the second part to fully avail himself of all of the said power herein granted, and along said right of way and the lower end of Kano land bordering on the Government road to Wahiawa shall have the right to place poles and wires for the purpose of transmitting such electric power but in no wise to obstruct the roadway or be dangerous to life or animals."

The junction of the Paliemo and Manawai branches of the Koula river is in the Koula valley about six miles above the nearest boundary of the lands described by metes and bounds in the lease to Watson, and the Koula water lead of the defendant corporation begins at the junction of said branches and consists, in the words of the Submission, "of a small dam immediately below the Manawai or right hand branch of said river, a number of small trestle work bridges for the flume to rest upon, tunneling along the hill side, together with ditches, piping and flumes, and runs along the hill side, crosses the Hanapepe valley and enters upon the demised premises at the mauka border thereof." "In order to use the power of the water in the Koula river," still quoting from the Submission, "it would be necessary to erect a power house at or near the river, and to place poles and wires upon the adjoining lands of Gay & Robinson in order to transmit the current to the places where it would be used. That the use of said power by plaintiff under said lease would not consume any of the water flowing in the river bed, but said use would necessarily prevent the defendant from generating electrical energy from the power of said water, should the defendant at any time hereafter desire to use said electrical energy on its plantation, and should the court find that the right to use said water is granted" by the lease to Watson above mentioned.

"At the time said agreement between Gay & Robinson and William R. Watson was made, generating electrical energy from water power was not in vogue upon sugar plantations in the Hawaiian Islands, and the use of electricity upon the plantations in this country was at that time uncommon."

The claims of the parties and the issue upon which a decision is sought, are thus stated in the pleadings:

"Defendant claims that agreement with William R. Watson assigned as aforesaid, gives it the right to use all the waters of the said Koula and Hanapepe streams, for any plantation purposes, that a using of the water of said streams, irrespective of the place of taking, at a point not included in the demised premises, at a distance of several miles therefrom, upon other lands of the grantors, and the right to enter upon other lands of the grantors for the purpose of generating electricity for the use of defendant's plantation, and transmitting the same to its plantation, is a plantation purpose, and under said agreement the defendant has the absolute and exclusive right and privilege from time to time to use all or so much as it may require of said waters for its plantation for such or any other plantation purpose.

"Plaintiff claims that the power of the falling and running water of said Koula valley for any purpose, was not conveyed by said agreement to William R. Watson; that defendant has not now the right to develop the power of said running and falling water of said Koula valley, above the junction of the Paliemo and Manawai branches of the said Koula river, but that under said lease marked Exhibit 'B' such right was granted to him.

"An adjudication is asked for upon the question as to whether or not the Hawaiian Sugar Company has the right, under said agreement, marked Exhibit 'A' to use all or such as it may require of the power of said stream, during the term of its said agreement for the purpose of generating electricity to be used on its said plantation for its plantation purposes, or whether said Fred J. Cross has the right to proceed and develop said water power under the terms of his said lease."

The question to be determined is one of construction of the lease to Watson. In the first place, it seems clear to us that the provisions of that instrument with reference to water do not

constitute an absolute, unrestricted grant, for the term of years stated, of the water to the lessee, but merely a grant of the right to use, for the purposes and with the limitations stated therein, so much of such waters as may be necessary for said purposes. Unless and until thus used by the lessee (or his assignee) the lessors retain the control and ownership of those waters and may either use them themselves or grant to others the right to use them, such use by the lessors or their grantee being subject to be terminated at any time upon the lessee himself using them. It further seems clear that under the terms of the lease, the lessee may lead the waters named to the demised lands and, having done so, may utilize their power to generate electricity on said premises for use thereon for plantation purposes, and to this end may obtain and lead off such water at and from any point in the streams named.

The crucial question, however, is whether or not the lessee has the right, under the lease, to use the power of the water as it runs and falls in the beds of the streams to generate electricity, even though such electricity is to be used on the demised premises for plantation purposes, and whether or not it has the right to construct or set up, for the purpose of generating and conducting such electricity, on lands other than those specifically demised such buildings, machinery, poles, wires, and other appliances as may be necessary to accomplish that end.

Upon the showing made in the statement of facts submitted to us, we believe that neither of the parties to the Watson lease gave any thought, one way or the other, at the time of its execution to the question of the use of the power of the water as it runs and falls in its natural channels for generating electricity. The issue really narrows itself to this, to wit, whether or not the language of the instrument on the subject of water is sufficiently broad to include a grant of the power now claimed by the defendant.

For the defense it is urged that under the power to enter upon the lands of the lessor and to erect "dams and other works," it would be competent for the defendant to utilize the power of

the water on the banks of the stream as well as upon the demised lands, and that dams are erected as well to enable one to use the power of the water as to divert the water for use elsewhere; and that since, as conceded by the plaintiff, defendant may under the lease generate electricity with the aid of the power of the water after the latter is conducted on to the demised premises, it follows that defendant equally has the right to make use of that same power at a higher elevation on lands other than those demised, the difference being one merely of the *place* of utilization.

It is to be observed that the difference in *place* at once presents the distinction that, where the use is on the lands demised no question can arise as to the right of the lessee to erect upon the land such buildings, machinery, etc., as may be necessary to obtain the power, while, on the other hand, where the use is on land other than that demised by metes and bounds as above stated, the question of whether the lessee has been given by implication or otherwise the right to erect such structures, does arise. This right is not expressly extended in the instrument unless it be contained in the words "or other works." The easement granted in aid of the right "to take and use" the water, is to "enter upon the lands of the lessors and construct such dams or other works as may be necessary in order to obtain and use such water," and to "always have the right of way for and access to his piping, ditches, flumes and tramways over all the lessors' lands." No mention is made of poles, wires, or other machinery such as would be indispensable to the generating of electricity from the power in the water as it runs and falls in its natural channels and to the conducting of the electric current to the plantation below. No apt words are anywhere used in the instrument to designate the grant of such a right. While the words, "or other works," might possibly, if not otherwise restricted or explained by the language of the instrument, be broad enough to include such buildings, machinery, poles and wires, still that is not necessarily their meaning. On the contrary, we are of the opinion that that is not their correct construction in

this case, and that they were here intended to include piping, ditches, flumes and such other appliances, if any there are, as are necessary, proper or customary for the diversion of water. There are several expressions in the instrument under consideration that indicate this. The right granted is to *"take and use"* the water, and *"for said purposes* to enter upon the lands of the lessors and construct such dams or other works "as may be necessary in order to *obtain and* use" such water. Again, "And also that if the lessee shall think fit to *take and* use the water of the said Makaweli river before *taking* the water of the Koula river he shall be at liberty to do so, but if he shall do so he shall not take or use the water from the Koula river unless within six years after he shall have commenced making sugar on the demised premises;"     *     *     "and that in any case the lessee will not enclose the demised lands before commencing the construction of *one or the other main water leads;"* upon surrender of the lease, "the lessee shall be at liberty to remove from the demised premises all buildings and houses, mills and machinery, but not     *     *     any standing fences, wharf fixtures or mooring buoys, *flumes* or *water piping* thereon;"

*     *     "And the lessee shall always have the right of way for and access to his *piping, ditches, flumes* and *tramways* over all the lessors' lands;"     *     *     *     "And that the lessors may have five watering places along the line of the lessee's *main water lead* for watering the live stock of the lessors." It is the *diversion* of the water for use on the demised lands below that is here intended and provided for, and not a use on the spot without diversion.

If the power of the running and falling waters may of right be used by the lessees for generating electricity by the establishment of machinery, etc., in the river bed or on the adjoining land, then this construction will lead to the result that other manufacturing establishments beneficial to the plantation may be similarly set up, as, or example, saw-mills and planing-mills driven by such power for preparing planks and other lumber for use in mill-buildings and other structures on the plantation be-

low; or even the sugar mill itself might be erected and maintained at any water-fall in the stream, if it were deemed profitable or desirable to do so. The principle is the same,—it would be a use of the same power, at the same place and for the permitted purposes. No such grant of the right to so use the lands not demised was contemplated or can be held to have been created by the language of the lease.

No question is raised in this case as to the defendant's right to use the granted water in any way it sees fit, *after* it has reached the demised lands, provided only it is for the purposes named in the instrument.

The main object of the lease was no doubt the establishment of a large sugar-cane plantation, and the granting of facilities which would tend to make the enterprise a success. At the same time, it is clearly apparent from a study of the lease that the lessors were extremely careful to make all possible reservations and exceptions in their own favor, and this too in addition to the rent or direct compensation stated, which consists of a share of the product. "No rights outside of the demised premises other than herein granted are hereby secured to the lessee," they added. Just what agreement the parties would have entered into in regard to electricity had that subject been mentioned or thought of, is altogether a matter of conjecture. The lessors may possibly have yielded to the lessee's rights equivalent to those now claimed by the latter, but there is at least as much ground for believing that the right, if granted, would have been made subject to some restrictions and reservations.

To the first question submitted, to wit, "whether or not the Hawaiian Sugar Company has the right, under said agreement marked Exhibit A" (being the lease to Watson) "to use all or such as it may require of the power of said stream" (meaning thereby the power of said stream as the water runs and falls therein on lands other than those demised) "during the term of its said agreement for the purpose of generating electricity to be used on its said plantation for its plantation purposes," we answer that the Hawaiian Sugar Company has not such right.

To the second question submitted, to wit, "whether said Fred. J. Cross has the right to proceed and develop said water power under the terms of his said lease," we answer that Fred. J. Cross has such right, subject, however, to all rights acquired by the Hawaiian Sugar Company through the lease to W. R. Watson. These rights of the Hawaiian Sugar Company include, in our opinion, the right to divert and use the water of the Koula river for the purposes stated in the Watson lease, and the right to so divert such water at any point in said river, even above such works as plaintiff may erect for the purpose of creating and developing electrical energy or power.

*Magoon & Silliman, Kinney, Ballou & McClanahan* and *Robertson & Wilder* for the plaintiff.

*F. M. Hatch, W. O. Smith* and *R. D. Mead* for the defendant.