## TERRITORY *v.* WILLIAM MANN.

## No. 1706.

ERROR TO DISTRICT MAGISTRATE OF HONOLULU.

## TERRITORY *v.* C. B. WOOD.

## No. 1707.

ERROR TO DISTRICT MAGISTRATE OF HONOLULU.

## TERRITORY *v.* J. DONOVAN FLINT.

## No. 1712.

APPEAL FROM DISTRICT MAGISTRATE OF HONOLULU.

ARGUED AUGUST 20, 1926.                    DECIDED NOVEMBER 1, 1926.

PERRY, C. J., BANKS AND PARSONS, JJ.

STATUTES—*construction—legislative powers of municipality.*

Act 266, L. 1923, entitled "An Act Relating to the Licensing and Regulating of the Carrying on of Certain Businesses, Professions, Trades, Callings and Occupations in the Territory of Hawaii," does not authorize the City and County of Honolulu to pass an ordinance requiring physicians, dentists and lawyers to obtain licenses from the city and county to practice their professions and prohibiting them from practicing their professions without city and county licenses.

MUNICIPAL CORPORATIONS—*ordinances—validity.*

Ordinance No. 281 of the City and County of Honolulu, entitled "An Ordinance for the Licensing and the Regulation of and the Imposition of a License Tax for the Transaction and Carrying on of a Business, Profession, Trade, Calling and Occupation," if it prohibits physicians, dentists and lawyers from practicing their professions without licenses from the city and county, is to that extent beyond the legislative powers of the board of supervisors and invalid.

The defendant Mann was tried in the district court of Honolulu upon the charge that he did "on the 20th day of February, 1926, and during one month next prior thereto, independently practice dentistry and engage in and carry on the profession of dentistry in Hawaii, without first having procured a license so to do from the treasurer of said City and County of Honolulu, contrary to the provisions of Ordinance No. 281 of the City and County of Honolulu, Territory of Hawaii." A demurrer to the charge having been overruled, a stipulation was filed by the parties showing the facts to be that "on the 16th day of February, 1921, pursuant to section 1041 of the Revised Laws 1915, as amended by Act 136 of the Session Laws of 1917, and further amended by Act 19 of the Special Session of 1920, the defendant paid the secretary of the board of dental examiners in and for the Territory of Hawaii, the sum of twenty-five ($25.00) dollars, and was thereupon granted a license to practice dentistry in the Territory of Hawaii;" that "the said board of dental examiners were appointed by the governor of the Territory of Hawaii in the manner prescribed in section 8 of the Organic Act;" that "ever since the 16th day of February, 1921, and upon the date the within complaint was filed, the defendant has been engaged in the continuous practice of dentistry in the Territory of Hawaii under said license;" and that "the defendant has not procured an additional license to practice dentistry from the treasurer of the City and County of Honolulu."

The defendant Wood was tried in the same court upon the charge that he did "on the 20th day of February, 1926, and during one month next prior thereto, independently practice medicine and engage in and carry on the profession of physician and surgeon" in Honolulu "without first having procured a license so to do from the treasurer of said City and County of Honolulu, con-

trary to the provisions of Ordinance No. 281" aforesaid. Upon the overruling of a demurrer to the charge the facts were by stipulation agreed to be: "that on the 5th day of January, 1887, the defendant, pursuant to section 279 of the Compiled Laws of the Kingdom of Hawaii (1884), paid to the minister of the interior department of the Kingdom of Hawaii the sum of five ($5.00) dollars, and was thereupon granted a license to practice medicine and surgery in all parts of the Kingdom of Hawaii;" that "ever since the 5th day of January, 1887, and upon the date the within complaint was filed, the defendant has been engaged in the continuous practice of medicine in the Territory of Hawaii"; and that "the defendant has not procured an additional license to practice medicine from the treasurer of the City and County of Honolulu."

The defendant Flint was tried in the same court upon the charge that he did "on the 20th day of February, 1926, and during one month next prior thereto, independently practice law and engage in and carry on the profession of attorney-at-law at and in Honolulu * * * without first having procured a license so to do from the treasurer of said City and County of Honolulu, contrary to the provisions of Ordinance No. 281 of the City and County of Honolulu." Upon the overruling of a demurrer to the charge the facts were by stipulation agreed to be: that the defendant "was duly admitted to practice law before all the courts of the Territory by the supreme court on Jan. 15, 1921; that he was duly admitted to practice law before the U. S. district court in and for the district and Territory of Hawaii on Feb. 4, 1921; that he has complied with all the provisions of chapter 139 R. L. H. 1925, and ever since his admission to practice he has been and now is an attorney-at-law in good standing;" that "on February 20th, 1926, and during one month next

prior thereto said defendant did practice law and engage in and carry on the profession of attorney-at-law at and in Honolulu;" and that he "has never applied for nor has he procured any license to practice law from the treasurer of the said City and County of Honolulu."

Upon the agreed facts all of the defendants were found guilty by the magistrate and each of them was sentenced to pay a fine of $5. From these judgments and sentences the cases come to this court, two by writ of error and one by appeal.

In this court Ordinance No. 281 of the City and County of Honolulu, under which the defendants were prosecuted, convicted and sentenced, is attacked on the ground that it is contrary to the fifth, eighth and fourteenth amendments to the Constitution of the United States and invalid for the further reason that it embraces two distinct subjects, one of which is not expressed in its title, and that it was not within the powers of the supervisors to enact. Upon other grounds also the ordinance is claimed to be unauthorized and invalid.

Ordinance No. 281 is entitled "An Ordinance for the Licensing and the Regulation of and the Imposition of a License Tax for the Transaction and Carrying on of a Business, Profession, Trade, Calling and Occupation." Section 1 reads as follows: "It shall be unlawful for any person, firm, association or corporation to carry on any business, profession, trade, calling or occupation within the limits of the City and County of Honolulu or to carry on or operate any show, exhibition or lawful game within said limits without first having procured a license from the treasurer of the City and County of Honolulu or without complying with any and all regulations of such business, profession, trade, calling or occupation contained in any ordinance of the City and County of Honolulu or any law of the Territory of Hawaii; Provided, however, that

no license tax shall be collected from or imposed upon any person, firm or corporation who or which is now or shall be by statute made exempt from the payment of any such license tax; Provided, further, that no license tax shall be imposed, under this ordinance, upon any business, profession, trade, calling, occupation, show, exhibition or lawful game upon which an annual or temporary license tax is otherwise imposed or hereafter shall be otherwise imposed by the City and County of Honolulu or is imposed or hereafter shall be imposed by the Territory of Hawaii; Provided, further, that the provisions of this section shall not apply to any person, firm or corporation engaged exclusively in agricultural pursuits, or engaged solely in interstate commerce, or to any person in the service of the United States or of the Territory of Hawaii or of the City and County of Honolulu or of any person or firm or corporation, purely as an employee, but shall apply to any such person as to any independent business, profession, trade, calling or occupation." Section 3 reads as follows: "Nothing in this ordinance shall be construed to affect in any way or to cover the issuance of any annual or other license prescribed by law to be issued by the Territory or any department or officer thereof; nor to authorize the issuance of any license herein required until the requirements of any statute of the Territory of Hawaii, prescribing the conditions precedent to the issuance of the same, shall have been complied with; nor to allow the carrying on of any business, profession, trade, calling, occupation, show, exhibition or lawful game in a manner contrary to that prescribed in the statute nor to require a license or license fee for any business, profession, trade, calling, show, exhibition or lawful game for which a license is or shall be by law prescribed to be issued by the Territory or any depart-

ment or officer thereof except as specifically permitted by statute."

The only authority cited or known to us for the adoption of this ordinance by the supervisors is Act 266, L. 1923. That Act provides, in section 1, as follows: "The boards of supervisors of the counties and the city and county shall have the power to provide by ordinance for the licensing and the regulating of and the imposition of a license tax not to exceed one hundred dollars ($100.00) per annum on all and any kind of business, profession, trade, calling and occupation transacted and carried on within the limits of their respective jurisdictions, and all shows, exhibitions and lawful games carried on therein, and to provide for the collection of all such license taxes by suit or otherwise; and to provide and enforce appropriate penalties for the carrying on of any business, profession, trade, calling, occupation, show, exhibition or lawful games without a license or contrary to the provisions of any license; provided, however, that no license fee shall be collected, nor any penalty imposed under this Act from or upon any person, firm or corporation who or which is now or shall be by statute made exempt from the payment of any such license tax, and provided further, that where the amount of any license tax or fee is now or shall hereafter be prescribed by any territorial statute, such amount shall not be altered by any board of supervisors." Section 4 of the Act reads: "Nothing in this Act shall be construed to affect in any way or to cover the issuance of any annual or other license prescribed by law to be issued by the Territory of Hawaii, or any department or officer thereof; nor to authorize any board of supervisors to provide for the issuance of any license until the requirements of chapter 67 of the Revised Laws of Hawaii, 1915, or any amendment thereto or of any other statute prescribing the conditions precedent to the

issuance of the same shall have been complied with; nor to allow the carrying on of any business, profession, trade, calling, occupation, show, exhibition or lawful game in a manner contrary to that prescribed by any statute; nor to require a license or license fee for any business, profession, trade, calling, occupation, show, exhibition or lawful game for which a license is or shall be by law prescribed to be issued by the Territory of Hawaii, or any department or officer thereof, except as specifically permitted by statute. Provided, however, that an annual or temporary license tax may be imposed upon any business, profession, trade, calling, occupation, show, exhibition or lawful game upon which no annual or temporary license tax is imposed by the Territory."

In approaching the construction of this statute it is well to bear in mind the underlying principles. A license is a permission for the doing of that which without it would be unlawful and that irrespective of whether the illegality of the act without the license was preexisting or was created by the same or a contemporaneous statute. Licenses are ordinarily required for one of two distinct purposes: one, in the exercise of the police power, to protect the members of the community with respect to their lives, their health or their happiness; and the other, in the exercise of the power of taxation, to obtain funds for the conduct of the government. There may be a license without a tax and there may be a tax without a license. 4 Cooley, Taxation, 4th ed., §§ 1688, 1675, 1680, 1691; *Youngblood* v. *Sexton,* 32 Mich. 406, 424; *Savannah* v. *Cooper,* 63 S. E. (Ga.) 138, 139, 140; *Savannah* v. *Charlton,* 36 Ga. 460, 462; *Sonora* v. *Curtin,* 70 Pac. (Cal.) 674, 675; *Home Ins. Co.* v. *Augusta,* 50 Ga. 530, 537; 37 C. J. 169. The issuance of licenses may be provided for with the requirement of a small license fee, as it is called, to meet the cost of the mere issuance of the license; or

there may be a license, with or without this license fee, with the requirement of an annual payment by the licensee either in the further exercise of the police power and as a means of regulation or purely for the production of revenue. *Ib.* There may be circumstances under which an attempted exercise of the police power would not be necessary or justifiable in any view and, therefore, would be nugatory; and yet, under the same circumstances, the exercise of the power of taxation would be sustainable.

In the precise cases before us the defendants are charged, not with a failure to pay the taxes named in the ordinance, but with a failure to obtain a license from the city and county for the practice of their respective professions and it is sought to punish them for continuing to practice their professions without a license from the city and county. Is this authorized by the statute or by the ordinance?

The defendant Wood holds a license to practice medicine and surgery, issued to him in the days of the monarchy in conformity with its laws then prevailing. The defendant Mann holds a license for the practice of dentistry, issued to him in 1921 by the board of dental examiners of the Territory in accordance with the laws then in force. The defendant Flint holds licenses to practice law in all the courts of the Territory and in the federal courts within the Territory, issued to him in 1921 in accordance with the laws then in force.

The statutes of the Kingdom of Hawaii (Comp. L. 1884, Ch. 59, Sec. 279) vested in the board of health and in the minister of the-interior power to examine applicants for licenses to practice medicine and surgery and to grant licenses to such of the applicants as were found duly qualified. Statutes of similar import have ever since existed under our successive governments and at

the time of the passage of Act 266, L. 1923, statutory pro-
visions were in force (R. L. 1915, Ch. 77) vesting in a
board of medical examiners, appointable by the governor,
the power to examine applicants for licenses as physicians
and surgeons and to recommend or to refuse to recom-
mend to the board of health the issuance of licenses. The
powers of the board of health and of the board of medical
examiners and the procedure to be followed by those
boards concerning the issuance of licenses and the pen-
alties for practicing without a license were all provided
for in detail in that chapter. The defendant Mann, like-
wise, obtained a license to practice dentistry after an ex-
amination by a board of dental examiners whose appoint-
ment, powers and duties were provided by territorial law
(R. L. 1915, Ch. 79) ; and the defendant Flint obtained
a license to practice law in all of the courts of the Ter-
ritory from the supreme court under provisions of terri-
torial laws (R. L. 1915, Ch. 135).

In each of these three instances the territorial statutes
set forth in detail the powers and the duties of the rep-
resentatives of the Territory who were empowered to
examine applicants and to admit or to refuse to admit
them to the privilege of practicing. These provisions of
territorial law in one form or another were all in force
at the date of the passage of Act 266 and at the times
named in the charges brought against the defendants;
and the defendants were all in good standing in their
respective callings and entitled to practice their profes-
sions under their territorial licenses. None of these ter-
ritorial laws relating to the examination of dentists, doc-
tors or lawyers were expressly repealed by Act 266. Were
they repealed by implication? Repeals of the latter kind,
while possible in point of law, are not favored. The lan-
guage of Act 266 is sufficient to show that no such repeal
was intended by the legislature. While Act 266 in its

first section empowered the board of supervisors of the city and county to license and regulate and impose a license tax upon all professions and to provide and enforce appropriate penalties for the practice of professions without a license from the city and county, nevertheless, in section 4, it is expressly declared, omitting unessential words, that "nothing in this Act shall be construed to affect in any way any license prescribed by law to be issued by the Territory of Hawaii or any department or officer thereof." If the present convictions are sustained the licenses of all of these defendants will be permitted to be seriously affected. They will be in effect regarded as null and void. In section 4 it is further declared that nothing in the Act shall be construed "to require a license or license fee for any * * * profession * * * for which a license is or shall be by law prescribed to be issued by the Territory of Hawaii, or any department or officer thereof, except as specifically permitted by statute." As above stated, in the case of each of these professions a license is by law prescribed to be issued by departments and officers of the Territory. Thus far the language of section 4 would seem to be entirely unambiguous and to clearly show that it was the intention of the legislature that the city and county should not be authorized thereby to in any way affect existing licenses of doctors, dentists and lawyers or to require additional licenses from them. It is suggested, however, that the closing proviso of section 4 operates as an exception, authorizing an ordinance requiring additional licenses and disregarding existing licenses, in the cases of the three professions under consideration. We do not so understand the proviso. The language is, "provided, however, that an annual or temporary license tax may be imposed upon any * * * profession * * * upon which no annual or temporary license tax is imposed by the Territory." It is to be noted that

the language used is entirely different from that employed in the earlier parts of the section. The proviso is not that the Act may be construed to affect licenses issued by the Territory or any its officers, if no annual or temporary license tax is imposed by the Territory, nor is it that under the Act licenses may, in such cases, be required by the city and county of professions for which a license is by statute prescribed to be issued by the Territory or any its officers; but it is simply that a *"tax* may be *imposed"* upon any profession upon which no annual or temporary license tax is imposed by the Territory. The authority to tax and the authority to license are two different things. It may be that the language of this proviso, either standing alone or regarded in conjunction with the remainder of the Act, authorizes the city and county to impose a tax upon those holding territorial licenses as doctors, dentists or lawyers; but it certainly is not apt or sufficient to show an intention thereby to destroy or injuriously affect existing licenses issued by the Territory or its officers or to require licenses, issuable by the city and county, in addition to those required by the Territory under its express statutes. The use of the word "license" in describing the tax named in the proviso is insufficient to justify the inference that it was thereby intended to authorize the city and county to itself require and issue licenses in the cases of the professions under consideration. Just what was meant by the expression "license tax" may possibly be open to doubt. It may be that what was meant was a tax upon the profession or occupation already licensed by the Territory or capable of being licensed by the Territory; or it may be that it was thought that the tax was to be imposed upon the privilege conferred by the territorial license, or, in other words, upon the license itself, as a valuable possession of the licensee; but, whatever the nature of the

tax intended may be, the authority conferred by the proviso was an authority to impose a tax and not an authority to destroy existing licenses or to require new licenses in disregard of the territorial privileges.

Our conclusion being that Act 266 did not authorize the supervisors of the city and county to pass any ordinance injuriously affecting the status of territorial licenses in these professions or to require additional licenses from the city and county in disregard of licenses obtained or obtainable from the Territory, it is unnecessary to consider whether the ordinance itself purports to require a license in these three classes of cases. Obviously, the ordinance cannot require licenses, the power to require which is withheld by Act 266. The supervisors in this respect can exercise only those powers which are expressly granted to them by the legislature. *Ould & Carrington* v. *Richmond,* 23 Gratt. 464, 467. Similarly, it is unnecessary to consider whether or under what circumstances the city and county may under Act 266 tax doctors, dentists and lawyers or their respective occupations or their existing territorial licenses. These are not actions or suits for the recovery of the taxes. They are criminal proceedings against the defendants, seeking to punish them for exercising privileges granted them under unrepealed territorial laws.

So, also, it is unnecessary to consider the questions which have been argued relative to the unconstitutionality of the ordinance. It is well settled in this jurisdiction as well as in other jurisdictions that courts will not consider questions of unconstitutionality unless it becomes absolutely necessary to do so. *Schoening* v. *Miner,* 22 Haw. 196, 202, 203. See, also, 26 A. & E. Ency. L. 569 and 36 Cyc. 971. When the ultimate question at issue can be disposed of upon a mere matter of statutory construc-

tion the alleged unconstitutionality will not be determined.

The judgments of the district court are set aside and the defendants are discharged.

*A. Withington* and *A. M. Cristy* (*Brown, Cristy & Davis, Robertson & Castle* and *Huber & Kemp* on the briefs) for appellant Flint.

*J. V. Hodgson* (*Peters & O'Brien* on the briefs) for plaintiffs in error Mann and Wood.

*W. C. Moore,* Deputy City and County Attorney (also on the brief), for the Territory.