*A. S. Hartwell,* for plaintiff.

*W. A. Kinney,* for defendants.

———

C. F. HORNER and PAUL R. ISENBERG, comprising the firm of PIONEER MILL *v.* KUMULIILI (k), KALUA KANAWALIWALI (k), KUKUE (k), KUKAIA (k), ILAIKA (w), KAUAHIKAUA (k), WAHINEPIO (w), KAHAI (k), KALUA (k), CHARLES LIILII (k), HENRY HAIRAMA (k), D. KAHAULELIO (k), NOA KAHAULELIO (k), KEAO (k), KAWAHA-MANA (w), KAAEAE (k), KAPILI (k), KAHOO-NEEAINA (w), PIIMOKU (w), KEALO (k), MAI-KEIKE IHIHI (k), KALEIHOOMIO (k), KAHULI-KAA (k), ELIA (k), KULU (k), KUKUE (k), PUNI-HELE (k), KAMINAMINA (w), A. PALI (k), WILI AHOLO (boy), MRS. HATTIE AYERS (w), WM. WHITE (k), HENRY SMITH (k), KUALAU (w), WAIHOIOAHU (k), KANELAWAHINE (k), LILI-UOKALANI (w), LIKUA (k), OPUNUI (k), PALA-KIKO (k), D. KAHAULELIO (k), KAHOINO (w), HOOHILAHILA (w), JOE PANIOLE (k), REV. J. WAIAMAU (k), UILAMA HINAU (k), KAHALE-PUNA (w), MOKU (k), MRS. SYLVA, MRS. ESPIN-DA, J. ESPINDA (k), MRS. PRATT of Honolulu, KALOIELE (k), MRS. J. F. BROWN of Honolulu, G. K. HALEMANO (k), S. KOKO (k), J. F. BROWN, M. MAKALUA, KANEKOA (k), and C. AHWAI.

APPEAL FROM COMMISSIONER OF WATER RIGHTS, DISTRICT OF LAHAINA.

SUBMITTED JUNE 24, 1895. DECIDED DECEMBER 16, 1895.

JUDD, C.J., AND FREAR, J.

On appeal from H. Dickenson, Esq., Special Commissioner of Private Ways and Water Rights.

The system of using water for irrigation from the Kauaula stream in the district of Lahaina, Maui, as established by ancient usage, defined by the court.

Persons owning land entitled to water on a certain day may consolidate or exchange their supplies of water with others, providing this does not injuriously affect other persons.

OPINION OF THE COURT BY JUDD, C.J.

This is a suit brought before Henry Dickenson, Esq., Special Commissioner of Water Rights for the District of Lahaina, Maui, alleging a controversy between plaintiffs and defendants in respect to the amount of water, method and time of its use upon lands owned or held by both parties. The water in question flows from its sources at the head through a deep valley called Kauaula, situated in the rear of the town of Lahaina. The entire stream is taken up and used upon land in the valley on both sides of the stream for irrigating crops of kalo and on the flats below for sugar cane. Except on occasions of freshets none of the water is wasted by running into the sea. This region was formerly thickly populated, and the kuleanas granted to natives by the Land Commission within and outside of the valley are numerous. The plaintiffs own the extensive sugar plantation which occupies a large portion of the old town of Lahaina. They have acquired a large number of the ahupuaas which, though small in area are very numerous in the district of Lahaina. They have also acquired by purchase and by lease many kuleanas. A list of all the lands, ahupuaas, ilis and kuleanas under the water system of the Kauaula stream, as awarded by the Land Commission is given in the complaint, and a separate list of the lands owned or held by the plaintiffs is also given. It was evident to us

from an inspection of this territory that a large number of kalo patches formerly in cultivation and irrigated from the stream of Kauaula were disused and were grass grown, but it was impossible from simple inspection to ascertain how long ago their disuse had begun. Doubtless many of them are owned by plaintiffs and the water to which they were entitled is used upon their cane fields below. From the testimony we gather that a goodly number of other kalo patches had been abandoned by their native owners, some through disinclination to work them and others through inability to get a sufficient quantity of water to cultivate them profitably. Doubtless the stream itself has diminished somewhat in quantity during the last half century from reasons that are conjectural. Mr. James Campbell says that the freshets or storm waters which every one could use at will to fill all their patches are much less frequent now than when he was a resident of Lahaina from 1851 to 1876. The plaintiffs claim and we find it established by the evidence, that the ancient method of dividing and distributing the water of Kauaula stream was by length of time and use. Generally the ahupuaas or ilis of land of a certain name situated on the level land below or "makai" has land, mainly kalo patches, in the valley above or "mauka" bearing the same name. One or two lands makai have no counterpart mauka, and at least one land mauka has no counterpart makai. These mauka kalo patches are similar to the "leles" or outlying portions of an ahupuaa, well known on other islands of this group as "leles" though as a rule they seem not to be so called in Lahaina. In order to irrigate these lands small ditches or auwais were dug in very ancient times, through which the water was led from the main stream on to the lands. On the Kaanapali or western side there are three main auwais, the first one nearest to the head of the valley is "Piilani," then below it is "Waimana," then "Puuhuliliole." On the Olowalu or eastern side are, first, "Puupapai," then "Muliwaikane." There are numbers of other auwais of much lesser length which start from the stream, irrigate a few patches and then turn into the

stream.   The ahupuaas and ilis in this part of Lahaina were
divided into two principal divisions each containing eleven
lands.   In order to make the division even, a few lesser ahu-
puaas were bracketed in pairs and treated as one land, and have
one "water day."   Division one, for example, had the water
during the day, and Division two during the night, the day
being from 5 o'clock a. m. to 5 o'clock p. m., and the night
being the remainder of the twenty-four hours.   While during
eleven consecutive days the lands in Division one were having
the water in rotation according to an arranged schedule during
the day, the lands in Division two were having it at night.
Then, when the last land in each division had been watered, a
shift was made, beginning the list again, and Division two re-
ceived the water in the day time and Division one took it at
night, and so on in endless rotation.   We find this general
resume of the water system of Kauaula to be well established
by the positive evidence adduced by the plaintiffs, the admis-
sions of many of defendants' witnesses, and the testimony of
some of the defendants themselves given in suits between them-
selves respecting water rights in this locality.   The contention
of defendants' counsel is that while this method of division
did apply to the main body of the ahupuaa or ili makai, it did
not apply to the kalo lands mauka which they claim had the
right to a continuous flow of water.   It seems that at present
all these ahupuaas and ilis of land makai and a large portion
of the kuleanas within them as well as about one-fourth in area
of the kuleanas containing kalo patches in the mauka part, are
owned by or under the control of the plaintiffs.   About all of
the area makai is in cultivation in sugar cane, requiring water
about once a week.   (In this discussion we use the term "day"
as meaning day or night as the case may be.)   The ancient
method of using the water was this:  When the "day" of a
certain ahupuaa, named "Kooka" for example, came around,
the kalo patches belonging to it and bearing the same name,
being mauka, had the water first run into them by the lateral
auwai until they were filled, then the water would be turned

back into the main stream and then taken out on to the land below named "Kooka." But this gave the water to the land below, planted in sugar cane, only once in eleven days, which was not often enough for successful cultivation of cane, and therefore the owners of the plantation began deviating from the "eleven day" system, and would use as needed the water of the days to which other ahupuaas were entitled on the ahupuaa whose cane needed it. The plantation owning the ahupuaas and taking care that the kuleanas within them, not owned by them, were filled before the diversion was made were not disturbed by the kuleana holders, and the plaintiffs now claim that they have acquired the right to do this by twenty years continuous and adverse use, that is by prescription. Possibly the plantation was not disturbed by suits, since no one was injuriously affected by the change. But having thus used the water upon the lands they have acquired, indiscriminately, without reference to the old right in rotation of days and nights as fixed by the ancient system, the plaintiffs claim and urge that the system must be strictly applied and enforced as to the kuleanas or kalo patches mauka. In considering this we remark that though the water of this water course was undoubtedly divided by some method or other in ancient times, the method of division of the water now sought to be enforced by the plaintiffs is hardly fifty years old, and being the result of the planning of several leading "konohikis" or head men under the chiefs or other persons (the land owners) assisted by the governor of the island, it was more or less elastic according to circumstances. The konohiki endeavored to secure equality of division and to avoid troublesome quarrels between tenants; and when the quantum of water in the stream was diminished through drought he saw to it that the quantity used by each was divided equally. The water from the auwai was subdivided among the various cultivators according to the amount of land cultivated and the needs of each. But when one kuleana seemed to need more water than others at any particular time the konohiki would on request allow a constant small stream of water to continue

to run in the particular auwai, after the patches were filled and while the main body of the land below was receiving its assigned supply. This is called "koii wai," and witnesses say that when their patches were dry they would ask and obtain a little water from the konohiki and their own neighbors.    If the plaintiffs . are "konohikis" of the various ahupuaas and ilis owned by them and are successors of the rights of the konohikis and insist upon them, they ought also to bear the burdens and responsibilities of the konohikis.    But supplies of water by permission do not create a right to them and the court cannot compel favors to be granted.

The testimony shows that during a good portion of the twenty years last past the plantation had not insisted that the "eleven day" system of supplying the water should be strictly executed, but, about three years' ago efforts were made to confine the natives cultivating the kalo land mauka to the old system.  Mr. Campbell says that he, when planting cane in Lahaina, relaxed the system in times of plenty.    Mr. Henry Smith the present head water luna of the plaintiffs, says that "the rules that Kahau-lelio spoke about (the 'eleven day' system) were not carried out when my predecessor was discharged and I was appointed." This was about 1892.    The testimony of those familiar with the "eleven day" system say (and it was so found by the commis-sioner) that when the water day of a certain land came around *all* the water of the Kauaula stream was entitled to be turned into the particular auwai leading the water to the said land. This does not seem to be the case in actual practice, for we found on the 30th of November last that all the water flowing in the Kauaula stream was not turned into any auwai and the flow was such that it could not possibly be taken into the Piilani au-wai.    This auwai is narrow and not deep and would not carry more than half the entire stream of Kauaula.  But this was not the dry season and the stream was not at its lowest.    It would seem as if the plaintiffs' water lunas were accustomed to turn in to the respective auwais only a portion of the entire stream and keep quite a flow of water running in the stream day and

night for the use of the plaintiffs' cane lands below.     Then, too, it seemed to us that the patches were not allowed to be filled full to the brim but the water was shut off as soon as the luna thought the patches had enough.     Mr. Campbell says that supplying kalo patches with water but once in eleven days is not now sufficient to keep the crop in good growing condition, and he attributes the success of the old eleven day system when he was a resident of Lahaina to the freshet or storm water which came down more frequently then than now.

The plaintiffs, while contending that they have the right to use the water on the makai lands irrespective of the days allotted in the system they contend for to each individual land, urge that the defendants' right to water mauka is limited to the use of the water only on the assigned day and that failure to use it on that particular day works a forfeiture of it until the "day" comes around again.     So a kalo patch, through any misadventure not getting its water on its particular day, might be without it for twenty-two days.     Their contention goes further, they claim that the various kuleana holders (defendants) are not authorized to exchange water with each other, and that water assigned under the water system under discussion to a particular land cannot be used upon another land on that day.     We cannot agree with this contention.     The right to use the water on a certain land on a certain day being established by prescription gives the owner of the land so far forth the right to use that water as he chooses, and he may allow part of it or all of it to be used elsewhere, provided this diversion does not injuriously affect others.     The principle that water may thus be diverted has been abundantly established by decisions of this court.     See *Peck v. Bailey*, 8 Haw. 658; *Kahookiekie v. Keanini*, 8 Haw. 310; *Lonoaea v. Wailuku Sugar Co.*, 9 Haw. 651.     It is an important principle for the plaintiffs as well as defendants.     It is evident from the testimony that the intent and spirit of the ingenious "eleven day" system of water supply in this locality, elaborated from long experience by men whose aim was to secure equal rights to all and to avoid quarrels, was to give the mauka

lands in rotation sufficient water for the successful growing of kalo. And it must be remembered that the mauka lands were to have their water first. While the system must in general be preserved, that is, the two grand divisions and the subdivisions of the various lands by name and the rotation of the water supply as above set forth must continue, the system must continue to have the other features which it had under the old konohikis. We shall enumerate these later.

It is beyond the province of this court to adjudge and decree that each kuleana holder shall tamp his patches and banks when replanting and keep his auwais free from weeds and grass under penalty of being deprived of his right to water. Self-interest ought to secure good husbandry. But it is equally impossible for this court to require the plaintiffs to display the same spirit of accommodation to the necessities of a particular kuleana holder that was in the old konohikis.

The detail of the execution of the system of using the water in question must be left to the honesty and fairness of the parties interested. We can only pass upon the legal rights involved.

We are authorized by the statute to make "such decision as may in each particular case appear to be in conformity with vested rights and be just and equitable." We find therefore as follows:

The lands watered from the Kauaula stream are separated into two principal divisions. Division one consists of the lands from Wainee to Polaiki, including both. Division two consists of the lands from Puunauiki to Waipaahao, including both. Principal Division one comprises the following named lands: 1, Wainee and Pakala; 2, Wainee two; 3, Wainee one; 4, Mokuhinia; 5, Puaanui; 6, Puaaiki and Waiokama; 7, Kooka; 8, Alio; 9, Kamani and Ilikahi; 10, Polanui; 11, Polaiki.

Principal Division two comprises the following named lands: 1, Puunauiki; 2, Puunau Nui; 3, Puunau and Kaulalo; 4, Halakaa; 5, Puehuehuiki; 6, Puehuehu Nui; 7, Puehuehupiliwale; 8, Makila; 9, Pahoa; 10, Puupapai; 11, Waipaahao.

These two principal divisions take the water for eleven con-

secutive days, one division by day and the other by night, and when the eleven days are completed the division taking the water by day takes it at night and vice versa, in endless rotation. In each principal division each of the lands comprising it is entitled to the water for twelve hours, by day or night as the case may be, in rotation in the order as their names are given above.

The lands of Kauaula and Makila above the head of Piilani auwai are entitled to water whenever needed without reference to "days." Kuia is entitled to water on Kooka's day and Haleu to water on Puupapai's day.

The whole of the Kauaula stream is entitled to be turned into the respective auwais when the assigned day or night comes round, for the use of the land whose day or night it is according to the above schedules. The amount of water to be turned into any particular auwai is not discretionary with plaintiffs.

The kalo patches mauka are first to be filled full to the brim or.top of the kuaunas (banks), and the auwai to be then closed at its head and the water remaining in the auwai is to run down to the patches then just filled, and not to the land whose turn comes next. When these mauka patches are fully supplied and the auwai closed, the water will continue on in the bed of the stream to the lands of the same name below during the rest of the "day."

Agreements made between the parties defendants consolidating their rights to water and using them jointly are allowable, provided no injury is thereby done to others.

Costs in the Commissioner's Court and in this court to be divided between the parties.

*W. A. Kinney*, for plaintiffs.

*J. A. Magoon*, for defendants.