## JOHN E. BUSH, MARY J. BUSH, A. K. KUNUIAKEA, KAHILIOPUA and IALUA *v*. REPUBLIC OF HAWAII.

### PETITION FOR CONTINUANCE.

SUBMITTED MARCH 22, 1900.          DECIDED MARCH 23, 1900.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE PERRY.

Handing in a resignation absolute in form to the proper officer does not necessarily *ipso facto* vacate the office. Whether the office is vacant or not depends upon the intention and understanding of the parties considered with reference to the public interests.

### OPINION OF THE COURT BY FREAR, J.

When this case was called—the first case called for hearing at this term—counsel for the plaintiffs filed a petition alleging that Chief Justice A. F. Judd had in December last filed with the President his written resignation of his office and that he then ceased to be Chief Justice, and praying that the Court decline to hear the case at this time and until a Chief Justice shall be duly appointed. The Court intimated that it had reason to believe there were other facts that bore upon the question whether such resignation had taken effect and thereupon the Attorney-General representing the defendant took the position that the Court was properly constituted and stated that he

was willing; that the Court should proceed to hear the case but did not care to contest the question of the alleged vacancy of the office of Chief Justice, but would, if the Court so desired, endeavor to ascertain the facts in the matter. Upon the Court's expressing such desire the Attorney-General on the following day introduced affidavits by the President, the Auditor-General and Mr. A. F. Judd, Jr. That of the President was to the effect that on the 27th of December, 1899, he received a letter dated December 4, 1899, from the Chief Justice, then in the State of New York, as follows, omitting the formal parts: "I have the honor herewith to tender my resignation as Chief Justice of the Supreme Court of the Hawaiian Islands;" that on the following day he, the President, wrote to the President of the United States in reference to the Chief Justice's resignation, asking for instructions in the matter, and stating among other things, as follows: "I have not accepted his resignation as yet, as that would embarrass the status of the Court, there being legal provision for temporarily filling the place of an absent Justice, but none providing for an absolute vacancy, excepting by permanent appointment;" and that he also informed Mr. A. F. Judd, Jr., son and attorney in fact of the Chief Justice, that he declined to accept said resignation until hearing from the President of the United States; that he had received no communication in the matter as yet from the President of the United States and had received no other or further communication than the one above set forth either from the Chief Justice or his attorney in fact.

The affidavit of the Auditor-General was to the effect that he had received no official notification or information of any resignation of the Chief Justice and that he had to the present time issued warrants and taken receipts for his salary as such, the warrants issued since the departure of the Chief Justice for the United States in the autumn of 1899 having been issued to and the receipts therefor having been given by A. F. Judd, Jr. as attorney in fact for the Chief Justice.

The affidavit of A. F. Judd, Jr. was to the effect that he is

and since last September has been the attorney in fact of the Chief Justice; that during the last six months he had received and endorsed his salary warrants and receipted for the same as such attorney in fact; that on the occasion of writing his letter of resignation, he, the Chief Justice, told him, the affiant, that it was his wish to make his letter of resignation as simple and dignified as possible, and that it was his understanding of the law that it would take effect only upon the appointment of his successor, and that he so intended it and that words to that effect would be merely superfluous; and that he, the affiant, had not received from his father any intimation that his resignation was intended to take effect or that he desired it to take effect except upon the appointment of his successor.

Objection was made to the admissibility of certain portions of the affidavits, by counsel for the plaintiff and by Messrs. Geo. D. Gear and A. S. Humphreys, who availed themselves of the permission of the Court to hear such members of the bar as desired to be heard upon this question though not interested in this particular case. The affidavits were received subject to the objections to such parts as were objected to, and argument was heard. Subsequently the Court, upon examining the affidavits more carefully and deeming them silent or indefinite upon certain material points in respect of which it appeared possible to obtain further light and in view of the importance of the question, of its own motion called the President and Mr. A. F. Judd, Jr., to the witness stand.

The President testified in substance: that the letter of resignation was handed to him by A. F. Judd, Jr. and that, so far as he recollected, nothing was said at the time by Mr. Judd qualifying the letter but that he, the President, both then and afterwards made the statement to A. F. Judd, Jr., set forth in the affidavit, to the effect that he declined to accept the resignation until hearing from the President of the United States; that he made no communication to the Chief Justice in regard to the resignation other than that just referred to through his son and that he requested the said A. F. Judd, Jr., to transmit such communication to his father.

Mr. Judd testified in substance: that he delivered the letter of resignation to President Dole; that they talked over the question when it should take effect and that the President said he declined to accept it and that both understood it was to go into effect only on the appointment of a successor; that he did not recollect whether the President asked him to communicate that to his, the affiant's father; that he did so communicate to his father by letter of which he has not a copy; that he had received no reply; but thought he had received a letter from his mother acknowledging the receipt of that particular letter; that he had written to his father about all his acts as his attorney in fact and that, on account of his father's ill health, it was his mother's custom to read to him all letters that came to him or to her, and that the receipt of his letters had been acknowledged by her; that his father did not instruct him to continue to draw his salary; or request him to make any statement to President Dole in connection with the delivery of the letter of resignation.

The Court then heard further argument and took the matter under consideration. The Attorney-General stated that he did not object to a continuance but at the same time was willing to proceed with the hearing of the case.

Many authorities were cited to show that, although at common law a resignation did not take effect until accepted, in other words, that an office-holder could not vacate his office without the consent of the appointing power, yet the modern rule is otherwise, and the appointing power cannot ordinarily compel an officer to continue in office against his will. We do not see that such authorities have much bearing upon the present case.

Counsel appear to attach a peculiar magic to a written resignation. They even go so far as to strenuously contend that if an office-holder should hand to the proper person a written resignation absolute in form accompanied by an oral statement that it was not to take effect until accepted or until a successor was appointed, the office would *ipso facto* become vacant whether the resignation was accepted or not, and that evidence of the oral statement would be inadmissible, under the rule that parol

contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument. It is obvious that that rule has no application to such a case. What the effect of the testimony introduced in this case is or how much of it should be considered in the absence of other connected evidence is another question. But the broad proposition relied on by counsel that oral evidence is inadmissible to show the intention and understanding of the parties as to when a written resignation should take effect, is untenable.

In our opinion the question whether an office has become vacant through resignation is a question primarily of the intention of the parties more immediately interested, namely, the office-holder and the appointing officer or body, considered with reference to the interests of the public which is in a more general way also deeply interested.

Such appears to have been the view taken in *The Queen v. Costa*, 8 Haw. 552. In that case the Attorney-General resigned on the 1st of November, 1892, sending his resignation, as was done in the present case, to the Chief Executive through another. The resignation was not accepted and the Attorney-General acquiesced as shown by his continuing to perform the duties of his office. The Court held that, while they would not go to the extent of holding to the common law rule, yet under the circumstances, considering the intention of the parties and the public interests, the resignation did not take effect until a successor was appointed on the 8th of November.

The present is a collateral proceeding so far as the office of Chief Justice is concerned. The Chief Justice, though primarily interested, is not a party. We have not before us all the facts. The issue has not been contested. The question is one of interest to the public and to litigants in other cases as well as to the parties in the present case. Under the circumstances we at least should not feel justified in this proceeding in holding the office vacant. On the other hand we hardly feel justified in forcing the plaintiff to a hearing and accordingly grant a continuance until such time as it may be made to appear more clearly that the office of Chief Justice is not vacant.

Whether this preliminary matter should be decided by the remaining two Justices alone or by them and a Circuit Judge or member of the bar sitting in the place of the absent or non-existing member of the Court, we do not decide. That question was alluded to by counsel but was not pressed. A Circuit Judge sat with the Justices and we are all of the opinion above expressed.

*J. A. Magoon* and *I. M. Long* for the plaintiff.

The *Attorney-General* for the defendant.