JACK MENASHE *v.* MURAD A. SUTTON, MURAD A. SUTTON, TRUSTEE SUTTON TRUSTS, ADELE ANCONA SUTTON, CURTIS I. LERNER, JACK LERNER, MAX LEWIS, ALBERT LEWIS AND AUGUST R. BISHO.

No. 2776.

SUBMITTED JANUARY 6, 1950.    OPINIONS RENDERED JANUARY 21, 1950.

KEMP, C. J., AND LE BARON, J.

OPINION OF KEMP, C. J.
(Le Baron, J., concurring in part and dissenting in part.)

A vacancy in the office of associate justice of this court was created on July 11, 1949, when Associate Justice Cristy died.

The appellees in the above-entitled and numbered cause, having theretofore moved that the appeal be dismissed, filed two motions. In the first they moved that the court, acting by the chief justice and the associate justice thereof, enter an order disposing of the motion to dismiss appeal. In the second they moved that, in the event the foregoing motion be denied, the court enter an order disposing of the motion to dismiss appeal, said order to be entered by the court, acting by the chief justice, the associate justice and a circuit judge thereunto authorized by the written consent of the chief justice and the associate justice, pursuant to the provisions of section 9610 of the Revised Laws of Hawaii 1945.

The statutes involved are section 82 of the Hawaiian Organic Act and section 9610 of the Revised Laws of Hawaii 1945, as follows:

"Sec. 82. Supreme court. That the supreme court shall consist of a chief justice and two associate justices, who shall be citizens of the Territory of Hawaii and shall be appointed by the President of the United States, by and with the advice and consent of the Senate of the United States, and may be removed by the President; Provided, however, That in case of the disqualification or absence of any justice thereof, in any cause pending before the court, on the trial and determination of said cause his place shall be filled as provided by law."

"Sec. 9610. Full court; substitute justices. Parties to causes pending before the supreme court shall be entitled to a hearing before all of the justices thereof, and may not be compelled to go to trial before less than the full number thereof; provided, however, that if any of the justices of the supreme court shall be disqualified from sitting in any cause pending before the supreme court, or shall be unable to attend from sickness, accident, absence, or any other reason, his or their place or places for the trial and determination of such cause shall be filled by one or more of the circuit judges who has or have had no connection with the cause either as counsel or in an official capacity, and who is or are not otherwise disqualified, and who is or are not unable to attend from sickness, accident, absence, or any other reason, thereunto authorized by the written consent of the remaining justice or justices."

Section 82 of the Hawaiian Organic Act is, with immaterial variations, a duplication of section 1 of article 83 of the constitution of the Republic of Hawaii, promulgated July 3, 1894. Section 9610 of the Revised Laws of Hawaii 1945 is, with immaterial variations, a duplica-

tion of section 1170 of Hawaii Civil Laws 1897, which was section 56 of chapter 57, Session Laws of Hawaii 1892, approved November 25, 1892 and retained as the law of the Republic of Hawaii by section 1 of article 92 of the constitution of 1894.

The movants state their theory as follows:

1. Under section 82 of the Organic Act and section 9610 of the Revised Laws of Hawaii 1945, only a quorum of the justices is required since the consideration of the pending motion to dismiss is not either a "trial" or "determination" of the cause within the meaning of section 9610.

2. Assuming that either the Organic Act or section 9610 requires the matter to be considered by a court consisting of three justices, there is full statutory authority to designate a third judge.

The petitioner-appellant states that the questions presented are:

1. Can the word "absence" in section 82 of the Hawaiian Organic Act and section 9610 of the Revised Laws of Hawaii 1945, be construed to include the meaning "death"?

2. Are three justices necessary to the functioning of the supreme court of Hawaii?

The petitioner argues that each of his questions should be answered in the affirmative, his theory being that the word "absence" in both the Hawaiian Organic Act and the territorial statute includes "death," from which he concludes that, while the vacancy in the office of associate justice caused by the death of Justice Cristy exists, his place may be filled by a circuit judge, authorized by the written consent of the remaining justices, in accordance with the provisions of section 9610, Revised Laws of Hawaii 1945.

Apparently the petitioner does not concur in the respondents' motion that the two remaining justices enter an order disposing of the motion to dismiss appeal, but he does concur in the motion that the court, consisting of the two remaining justices and a circuit judge thereunto authorized by the written consent of the two remaining justices, enter an order disposing of the motion to dismiss appeal.

The attorney general, who has neither filed a brief nor extensively argued, did appear by one of his deputies who made a statement, from which we gather that the attorney general agrees with the theory that "absence" includes "death" and that the remaining justices should therefore designate a circuit judge to sit with them and dispose of the motion to dismiss appeal, notwithstanding the vacancy caused by the death of Justice Cristy.

At the request of the two remaining justices of the court, Messrs. James L. Coke, a former chief justice of the court, and Joseph V. Hodgson, a former attorney general of the Territory, as *amici curiae,* have presented their views on the question involved.

The *amici curiae* do not agree that the two remaining justices, acting alone, have authority to dispose of the motion to dismiss appeal or to call upon a circuit judge to take the place of the deceased justice to hear and determine the said motion.

I shall first consider the interpretation placed by the officials of the Republic of Hawaii, both executive and judicial, upon the above-mentioned sections of their constitution and statute.

Any act or statement of the executive or judicial officials of the Republic of Hawaii, manifesting his or their interpretation of section 83 of the 1894 constitution of the Republic of Hawaii and section 1170, Hawaii Civil Laws, may properly be considered as applicable to section

82 of the Hawaiian Organic Act and section 9610, Revised Laws of Hawaii 1945.

President Dole of the Republic has left no doubt as to his opinion of the meaning of said constitution and statute. In December 1899, when he was holding his office as president by virtue of the provision of the joint resolution of Congress approved July 7, 1898, whereby the Hawaiian Islands were annexed to the United States, he received a letter from the chief justice of the supreme court tendering his resignation as chief justice. The joint resolution provided that until Congress should provide for the government of such islands the powers of the officers of the Republic should be exercised by such officers in such manner as the President of the United States should direct. Accordingly, President Dole declined to accept the resignation of the chief justice unless directed to do so by the President of the United States and in asking for direction of the President of the United States he said in part: "I have not accepted his resignation as yet, as that would embarrass the status of the Court, there being legal provision for temporarily filling the place of an absent Justice, but none providing for an absolute vacancy, excepting by permanent appointment."

In the case of *Bush* v. *Rep. Haw.*, 12 Haw. 332, on March 20, 1900, the chief justice being "absent and on account of illness unable to sit with us," the remaining justices, Frear and Whiting, requested and authorized Circuit Judge Perry to sit with them and hear and determine said cause. When the said cause was called for hearing on said March 20, 1900, counsel for plaintiff filed a petition alleging:

"1. That this Court is not properly constituted to hear cases.

"2. That A. Perry, Esquire is not legally qualified to sit in this case.

"3. That heretofore on the 28th day of December 1899 the Honorable A. F. Judd, then Chief Justice of this Court, duly filed with S. B. Dole, President of this Republic, his written resignation of the Chief Justiceship of this Honorable Court, and that the said A. F. Judd then and there ceased to be Chief Justice of this Honorable Court." The prayer was that "this Honorable Court decline to hear the above entitled cause at this time, and until a Chief Justice shall be duly appointed and installed in office, and that Hon. A. Perry may not sit in this case."

After hearing evidence as to the alleged resignation, the court concluded that the tendered resignation of the chief justice not having been accepted, it was not effective and that Circuit Judge Perry was therefore properly authorized to substitute for the absent chief justice.

However, after reading the decision in open court Justice Frear announced, before adjourning, that the court would be ready to hear any cases tomorrow, "but that it will not force cases to trial if counsel do not agree." (Minutes of the afternoon session of March 24, 1900.)

Prior to the action of President Dole in refusing to accept the resignation of Chief Justice Judd, a vacancy existed in the office of associate justice for a short time after the death of Associate Justice Bickerton.

On or prior to December 10, 1895, the justices of the supreme court of the Republic of Hawaii were A. F. Judd, chief justice, R. F. Bickerton, first associate justice, and W. F. Frear, second associate justice. Justice Bickerton died December 10, 1895 and Second Associate Justice Frear, on January 6, 1896, was appointed first associate justice to succeed him and on January 11, 1896 W. A. Whiting was appointed second associate justice, succeeding Second Associate Justice Frear. Thus from December 10, 1895 to January 11, 1896, there were only the chief justice and one associate justice of the supreme court.

During the foregoing vacancy in the office of associate justice, the following causes were determined by Chief Justice Judd and Associate Justice Frear: *Laing* v. *Laing,* 10 Haw. 183; *Mattos* v. *Wilcox,* 10 Haw. 186; *In re Estate of Opae,* 10 Haw. 188; *Horner* v. *Kumuliilii,* 10 Haw. 174.

The *Laing* case was submitted on stipulation, dated December 20, 1895, to the "Court as now composed" and decided January 3, 1896.

The *Mattos* case was submitted on stipulation, dated December 17, 1895, to be "tried & decided by Honorable Justices comprising the Supreme Court sitting in Banco now present and respectfully request them to hear & decide the same" and decided January 3, 1896.

The *Opae* case was submitted on stipulation, dated December 17, 1895, "to their Honors the Chief Justice A. F. Judd and Justice W. F. Frear" and decided January 4, 1896.

The *Horner* case was submitted on stipulation of the parties, dated and filed July 8, 1895, which reads as follows:

"Whereas the above matter has been argued & submitted to the Court & since then Hon R. F. Bickerton has been taken ill and is unable to take further part in said cause it is hereby stipulated and agreed that the remaining justices who heard said cause may proceed and decide said cause and such decision shall be as binding & valid upon the parties hereto as if made by the full Court."

However, the opinion of the two remaining justices was not filed until December 16, 1895, six days after the death of Justice Bickerton.

The case of *Cross* v. *Hawaiian Sugar Co.,* 12 Haw. 415, was decided by Frear and Whiting, justices, on June 20, 1900, one month after the death of Chief Justice Judd and prior to the appointing of his successor. It appears,

however, from the record that the parties had on March 28, 1900 stipulated as follows:

"It is hereby stipulated and agreed between counsel in the above entitled cause, that the determination of the issues of the case by the Supreme Court as at present constituted shall be final and binding upon the parties hereto and shall be a bar to any exceptions or review by any other Court."

*Spalding* v. *Alliance Ins. Co.,* 10 Haw. 190, on October 29, 1895 was submitted for determination by the court then composed of Chief Justice Judd, Justice Frear and Circuit Judge Cooper in place of Justice Bickerton "absent from illness." Justice Bickerton died December 10, 1895 and the opinion was not filed until January 9, 1896, one month after the death of Justice Bickerton.

*Scott* v. *Nahale,* 12 Haw. 147, was decided by Justices Frear and Whiting in the absence of the chief justice, in accordance with a stipulation, dated October 11, 1899, as follows:

"It is hereby stipulated and agreed that the decision in this action argued before said Court may be rendered by the two remaining Justices in the absence of the Chief Justice, and that said decision will be as decisive and binding upon the parties hereto and the facts at issue as though rendered by the entire Court."

The case of *Rep. Haw.* v. *Ah Yee,* 12 Haw. 169, was decided by Justices Frear and Whiting, in accordance with a stipulation of the parties, dated November 2, 1899, which reads as follows:

"Agreed that two of the Justices of the Supreme Court shall finally decide these cases. All rights under the Statute for a decision by a full Court are waived."

The case of *Buckley* v. *Monsarrat,* 12 Haw. 265, was decided by Justices Frear and Whiting, in accordance with

a stipulation, dated October 2, 1899, which reads as follows:

"It is hereby stipulated and agreed by and between the parties hereto that in the absence of the Chief Justice a decision in the above named case may be rendered by the remaining Justices, and such decision will be accepted and bind both parties as if it were a decision of the entire Court."

After the effective date of the Hawaiian Organic Act, several vacancies have existed in the office of associate justice of the supreme court in addition to the vacancy in the office of chief justice, which began May 20, 1900 and continued to July 7, 1900, when former Associate Justice Frear qualified as his successor. No cause was submitted during that vacancy.

*Kapiolani Estate* v. *Thurston,* 16 Haw. 471, and *Spreckels* v. *De Bolt, First Judge,* 16 Haw. 476, have been cited as cases in which two justices and a substitute judge rendered opinions subsequent to the death or resignation of a justice.

The printed opinion in the *Kapiolani Estate* case erroneously indicated that Circuit Judge Matthewman served in place of Justice Hatch. The original opinion on file in said cause shows that the opinion of the court was signed by Chief Justice Frear and Associate Justices Hartwell and Wilder.

The opinion in *Spreckels* v. *De Bolt, First Judge,* was rendered by two justices and a substitute judge after the resignation of Justice Hatch and after Justice Wilder had qualified as his successor. However, the record shows that Circuit Judge Robinson had been substituted for "Justice Hatch disqualified" on January 7, 1905, the day on which the case was argued, and Justice Hatch did not resign until January 31, 1905.

A vacancy occurred when Associate Justice Wilder

resigned December 17, 1909 and on January 31, 1910 his successor, J. T. De Bolt, qualified. No case was submitted or decided during that vacancy.

The next vacancy in the office of a justice of this court was occasioned by the death of Justice Lindsay, who died September 5, 1926. Justice Parsons qualified as his successor on October 25, 1926.

Justice Lindsay was absent from the Territory on August 20, 1926, when *Ter.* v. *Mann, Territory* v. *Wood* and *Territory* v. *Flint* were consolidated and argued together and disposed of in one opinion, dated November 1, 1926, and reported in 29 Haw. 422. On August 20, 1926 Circuit Judge Parsons was requested and authorized by Chief Justice Perry and Associate Justice Banks to sit with them and hear and determine the said causes. As we have already noted, Judge Parsons qualified as associate justice on October 25, 1926 and on that date the parties stipulated as follows:

"Now come the Territory of Hawaii, by its attorney, Howard Hathaway, plaintiff-appellee, and J. Donovan Flint, Defendant-Appellant, by his attorneys Brown, Cristy and Davis, Robertson & Castle and Huber & Kemp, and stipulate that the above entitled cause may be re-submitted to the Supreme Court upon the arguments made therein and the briefs on file in said court."

Like stipulations by Peters and O'Brien, attorneys for the other two defendants, and counsel for the Territory were filed in the other two cases on the same date.

Next and finally, a vacancy in the office of associate justice was created on June 20, 1941, when Associate Justice Kemp qualified as chief justice succeeding Chief Justice Coke, resigned. The vacancy thus created was not filled until April 2, 1942, when Associate Justice Le Baron qualified. During said vacancy no causes were submitted or decided.

The Hawaiian Organic Act was enacted with full knowledge of the provisions of the constitution and laws of the Republic of Hawaii relating to the courts. As required by the joint resolution of annexation, two members of the commission, appointed by the President to recommend to the Congress such legislation concerning the Hawaiian Islands as they deemed necessary or proper, were residents of the Hawaiian Islands. Justice Frear, who had served as a justice of the supreme court throughout the existence of the Republic of Hawaii, was one of the commissioners and a member of the judiciary committee of the commission. The judiciary committee of the commission, in a report to the committee on territories, described as successful the judicial system of the Republic and the committee on territories reported that: "In view of the foregoing report it must be considered wise and safe to provide for the organization of the Territorial Courts of the Territory of Hawaii by substantially continuing them as now existing under the Republic of Hawaii and this has been done in the present bill."

The positive statement of President Dole, above noted, and his action in accord therewith, as well as the action of the remaining justices after the death of Justice Bickerton and prior to the appointment of his successor, also above noted, may be considered as having been adopted by the Congress in enacting section 82 of the Hawaiian Organic Act and by the territorial legislature in enacting the statute, now section 9610 of the Revised Laws 1945.

From the action of the remaining justices of this court, on the various occasions when a vacancy has existed either by death or resignation, in refraining from compelling litigants to submit their causes to them alone or to them and a circuit judge thereunto authorized by them, I believe that we may properly presume that they did not consider that the law on the subject authorized either

action by them. The foregoing long and uniform action of the many justices of this court in the performance of their official duty should not be condemned, ignored or lightly treated.

Turning now to a consideration of the statutes under consideration, without reference to prior interpretation, construction or administrative action thereon, I find myself unable to agree with the contention that the Congress and the territorial legislature have provided for or intended to provide for the filling of a vacancy by the remaining justices, even temporarily, for the trial and determination of a particular cause. The power of appointment of justices is vested in the President of the United States with the advice and consent of the Senate by the plain and unequivocal language of section 82 of the Organic Act and no part of that power has been delegated to anyone else. The words "any justice thereof," used in the phrase "in case of the disqualification or absence of any justice thereof" used by the Congress in section 82 of the Organic Act, clearly refer to a living person. At least the legislatures, which enacted the statutes to implement the provision of the constitution of the Republic and the provision of the Organic Act, understood that to be the meaning of said words.

The applicable definition of the word "justice," used as a noun in the phrase "any justice thereof" in section 82 of the Organic Act, is:

"2. A person duly commissioned to hold courts, or to try and decide controversies and administer justice; a judge or magistrate; esp.:   a   In England, a judge of the Supreme Court of Judicature, formerly of the King's Bench, Common Pleas, or Exchequer; in the United States, a judge of a common-law court or a superior court of record." (Webster's New International Dictionary, Second Edition.)

"Justice," as a noun, is synonymous with "judge" and a judge is defined by Webster as "A public officer who is invested with authority to determine litigated questions; one who gives a judgment." Obviously, when a judge or justice dies he is no longer a public officer—a vacancy exists in the official position that he held while living; he is no longer vested with authority to determine litigated questions; he is incapable of giving a judgment.

"In law, the word 'person' does not simply mean the physical body, for if it did it would apply equally to a corpse. It means a living person composed of body and soul." (*Morton* v. *Telegraph Co.*, 130 N. C. 299, 41 S. E. 484.)

"It is axiomatic that a corpse is not a person. That which constitutes a person is separated from the body by death and that which remains is 'dust and ashes'." (*Brooks* v. *Boston & Northern Street Railway*, 211 Mass. 277, 97 N. E. 760.)

"The word 'person' as it is ordinarily used means a living human being. It is so defined by Webster's and in Johnson's and in the Century dictionaries. It is so defined by the courts." (*State ex rel. Bancroft* v. *Frear*, 144 Wis. 79, 128 N. W. 1068.)

The word "unable," used in the phrase "if any of the justices of the supreme court * * * shall be unable to attend from sickness, accident, absence or any other reason" found in the implementing section of the statute, is defined by Webster as "Not able; incapable; unqualified; incompetent; inefficient; also *Poetic,* impotent; helpless." The word "unable" modifies the word "justice." A justice is a person and a person is defined by Webster as "A being characterized by conscious apprehension, rationality, and a moral sense; a being possessing, or forming the subject of, personality; hence, an individual human being; a particular individual."

The Texas constitution under consideration in *Glover* v. *Albrecht*, 173 S. W. 504, provided that a vacancy in the office of judge should be filled by appointment by the governor. It also authorized the legislature to provide for the holding of court "when the judge thereof is absent, or is from any cause disabled or disqualified from presiding."

Pursuant to the authority delegated to it, the legislature enacted that:

"Whenever, on the day appointed for a term of the district court, or at any time before the expiration of the term, or the completion of all the business of the court, the judge thereof shall be absent, or shall be unable or unwilling to hold the court, there shall thereby be no failure of the term, and no failure to proceed with the business of the court; but the practicing lawyers of such court present thereat may proceed to elect from their number a special judge of said court, who shall proceed to hold said court and conduct the business thereof, and shall have all the power and authority of the judge of said court, during such continued absence or inability, and until the completion of any business begun before such special judge."

The regular judge of the district court of Harris County was absent and unable to be present on March 6, 1911, when a term of his court was due to begin. Thereupon, pursuant to the above statute, a special judge was elected for said term by the practicing lawyers of said court present thereat. On the same day the special judge qualified.

The regular judge of said court died on April 23, 1911 and on April 28, 1911, during the March term of said court, the governor appointed a regular judge of said court while a motion for new trial was pending in a case of *Glover* v. *Houston Belt & Terminal Railway Company*.

The regular judge appointed by the governor qualified on the day of his appointment and thereafter the special judge, who had tried the case of *Glover* v. *Houston Belt & Terminal Railway Company,* granted the motion for new trial and the appeal in the case of *Glover* v. *Albrecht, supra,* involved the validity of that action by the special judge. In passing upon that issue the court said "We do not think any of the above terms [absent, disabled or disqualified] should be construed to embrace a vacancy caused by the death of the regular judge, and the Legislature has not authorized the appointment of a special judge in such case." It held, however, that it does not follow that, when a special judge has been duly appointed in the circumstances contemplated by the constitution and statutes, his authority to complete the business he had begun and was appointed to transact should cease upon the death of the regular judge.

I conclude that, in obedience to the territorial statutes which provide that "Parties to causes pending before the supreme court shall be entitled to a hearing before all of the justices thereof, and may not be compelled to go to trial before less than the full number thereof," we must hold that parties to pending causes may not be compelled to go to trial before the two remaining justices during a vacancy however created.

I also conclude that the proviso in section 82 of the Organic Act and the proviso in the territorial statute implementing it, do not empower the two remaining justices to authorize a circuit judge to sit with them to hear and determine causes during a vacancy in the office of a third former justice.

I think, therefore, that both of the motions under consideration should be denied.

*H. H. Moore* (*Pratt, Tavares & Cassidy* with him on the brief) and

*J. R. Cades* (*Smith, Wild, Beebe & Cades* with him on the brief) for the motions.

*W. F. Quinn* (*Robertson, Castle & Anthony* with him on the brief) and

*S. Shapiro,* also on the brief, contra.

*J. L. Coke* and *J. V. Hodgson, amici curiae,* filed a brief but did not argue.

OPINION OF LE BARON, J.
(Concurring in part and dissenting in part.)

The appellees filed a motion praying that a motion to dismiss an appeal be heard by the supreme court as presently constituted, *i. e.,* by the chief justice and first associate justice, the third member, the second associate justice, having died in office on July 11, 1949, while absent from his place on the court, and his successor not having taken office to date. At the same time they filed an alternative motion that such motion to dismiss be heard by the supreme court as presently constituted, but after being augmented by a circuit judge thereunto authorized to sit in the place of the deceased justice by the written consent of the chief justice and first associate justice pursuant to the provisions of section 9610 of Revised Laws of Hawaii 1945 as amended. The appellant, by written memorandum, does not resist the first and alternative motions for a hearing, but on oral argument doubted the propriety of trying the motion to dismiss by other than a full court to be constituted by the chief justice, first associate justice and a duly authorized circuit judge. He neither waives any right which he may have under the Hawaiian Organic Act and statute to a trial on the motion to dismiss before a full court, nor consents or stipulates that such motion be tried before less than a full court. On this state of the record, the first motion for a hearing is denied by the joint effect

of the opinion of the chief justice and that of myself as first associate justice. To avoid repetition, the ground of denial for that motion, as I see it, will be established in the course of this opinion as the alternative motion is considered.

The alternative motion presents but one question of law, pertaining as it does to a situation in which an absent justice of the supreme court died in office and his place to date not having been filled by presidential appointment. The question is whether or not the two remaining justices are authorized by law to fill temporarily the place of the deceased third justice, left empty by his death, so that a full court may try and determine a pending cause during the period of vacancy. More succinctly stated it is whether or not the exercise of judicial power of the Territory, as vested in the supreme court by section 81 of the Hawaiian Organic Act, to the extent of trial and determination of a particular pending cause survives the death of one member of that court or lies dormant until his successor takes office. That question is peculiar to this Territory and has never been adjudicated by any court of law, it now being formally presented for the first time in the history of the supreme court under the Hawaiian Organic Act of April 30, 1900. Prior to the enactment of that Act, however, the president of the Republic of Hawaii under the Joint Resolution of July 7, 1898, wrote a letter to the President of the United States on December 5, 1899, stating that he had not accepted a tendered resignation of the chief justice of the local supreme court on the theory that there was then "legal provision for temporarily filling the place of an absent justice, but none providing for an absolute vacancy, excepting by permanent appointment." This letter was introduced before the supreme court in the case of *Bush* v. *Rep. Haw.*, 12 Haw. 332, decided March 23, 1900, for the purpose of show-

ing that the resignation of the chief justice had neither been accepted nor taken effect. Although the question of vacancy was not passed upon in that case by the court, the letter of the president of the Republic presumably had a great effect upon the thinking of the bench and bar thereafter under the Hawaiian Organic Act. Illustrative thereof the place of a deceased justice has never been filled other than by permanent appointment, even though justices have died in office on other occasions, the remaining two justices in those cases merely refraining *sub silentio* from trying and determining any cause during the period of vacancy except on stipulation of the parties. Nevertheless, such past conduct of those remaining justices as well as that of the bar as a whole in not raising and pressing to final adjudication the question of authority to fill temporarily the place of an absent justice after his death but before his successor took office is evidence of consent to a negative answer to that question and entitled to great weight in considering it at this time. The problem, however, is not one of ascertaining what may have been in the minds of the bar and bench to explain their past conduct, but one of the intention of Congress in enacting the Hawaiian Organic Act as the fundamental law of the Territory, which does set up a tripartite form of government in the Territory with the continuing power of government divided into the legislative, executive and judicial power of the Territory and vested respectively in the three co-ordinate branches of government, *i. e.*, the legislature, the governor and the courts of the Territory.

By its nature, the Hawaiian Organic Act may be deemed the constitution of the Territory. It marks the great outlines of government and unavoidably deals in general language. It has none of the prolixity of a legal code and does not purport to provide for minute specifications of the powers of government and their exercise. The

broad purpose to establish for and in an advanced state of society an effective government with continuing powers of government is the reason for its enactment. That purpose sheds light on the legislative intent to effect it and thereby tends to reveal the meaning of the language employed by Congress in the Act. Underlying that purpose is the strong public policy that the exercise of no power of government to serve the general welfare of the people should ever be suspended. The nature of the Act as well as the character of both the purpose and policy thus requires that neither the purpose should be frustrated nor the policy invaded unless there is a clear mandate of Congress to do so expressed or necessarily implied by unequivocal language of the Act itself.

Clearly any suspension in the exercise of the judicial power of the Territory as vested in the highest body of the co-ordinate judicial branch of the territorial government would constitute to that extent a frustration of the broad purpose of the Act as well as an invasion of the public policy underlying that purpose. Yet the question thereof as presented for judicial answer for the first time in the history of that body under the Act is controlled by the intention of Congress. To discover that intention, therefore, is the aim of this opinion. The proper approach to such discovery is the one made to a constitutional question by Chief Justice Marshall more than a hundred and forty years ago in the famous case of *McCulloch* v. *Maryland,* 17 U. S. (4 Wheat.) 316, on page 407, as epitomized by his following short sentence: "In considering this question, then, we must never forget that it is a constitution we are expounding."

Section 82 of the Act reads: "Supreme court. That the supreme court shall consist of a chief justice and two associate justices, who shall be citizens of the Territory of Hawaii and shall be appointed by the President of the

United States, by and with the advice and consent of the Senate of the United States, and may be removed by the President; Provided, however, That in case of the disqualification or absence of any justice thereof, in any cause pending before the court, on the trial and determination of said cause his place shall be filled as provided by law." A bare reading of this section suffices to demonstrate that Congress intended that the supreme court continue to exercise the judicial power of the Territory as vested in that court by section 81 of the Act so as to try and determine a particular pending cause despite the absence of any one of its justices and irrespective of the causes or reasons for such absence. It likewise demonstrates that the power to appoint a citizen of the Territory to the office of a justice of the supreme court and the power to remove him are placed in the President of the United States, but the power to provide a method for filling temporarily the place of an absent justice on the court is delegated to the territorial legislature. Nor does the power to so provide conflict with the power to appoint, one being for the special purpose of trial and the other for the general purpose of office. There is patently no expressed prohibition in any of the language of the section against such a filling of the place of an absent justice after his death in office and during the period of vacancy. Nor does a prohibition to that effect arise by necessary implication from such language.

The key to the legislative intent as the determinant of the question presented is to be found in the meaning or sense in which Congress used the noun "absence" in the proviso of section 82 of the Act. That word as well as all other words employed therein, however, is to be taken in its ordinary and natural meaning, and not in a sense unreasonably restricted or enlarged.

The dictionary defines the noun "absence" as: "1.

State of being absent or withdrawn from a place or from companionship; failure to be present. 2. Want; lack; withdrawal; as the *absence* of witnesses. In the *absence* of conventional law. Kent. 3. Inattention to things present; abstraction (of mind); as, *absence* of mind. 4. An empty or unfilled place. 5. *Fencing.* Lack of contact between blades, esp. when caused by the sudden withdrawal of one of the blades from an engagement. Syn.—Non-attendance, nonappearance; deficiency, want. Ant.—Presence, attendance." (Webster's New International Dictionary, Sec. Ed. Unabridged.) The first, second and fourth are the pertinent definitions and concededly the ordinary meanings of the word. Significantly, none is concerned with the existence or nonexistence of any object or person during the state of absence or with the status of the absent object itself, or of the absent person himself, even though one meaning of the adjective "absent" is defined as "not existing" by the same dictionary. In ascertaining which is the most pertinent meaning, the context of the word "absence" must be considered in the entire section which deals not only with "the supreme court" but with a "place" thereon capable of being "filled." From such context the most pertinent meaning is that defined to be "An empty or unfilled place" on the supreme court. Such meaning is interchangeable with that of the word "vacancy." Congress thus employed a word especially applicable to the place on the supreme court left "empty or unfilled" by the death of an absent justice during the period of vacancy. Nor does the possessive pronoun "his" in the words "his place" impair such a special application. Illustrative thereof is the powerful language of the Scriptures as follows: "As the cloud is consumed and vanisheth away; so he that goeth down to the grave shall come up no more. He shall return no more to *his house* neither shall *his place* know him any more." (Job VII, 9, 10. Em-

phasis added.) Consistent with that special application, the section does not state or require any inquiry into the causes for the absence or the reasons why the place is empty or unfilled. Nor does it characterize the absence as being temporary or permanent. It hence would be sheer judicial legislation beyond the power of courts to do so. "An empty or unfilled place" as the most pertinent ordinary and natural meaning of the noun "absence" is within not only the letter but the spirit and reason of the Act itself. That meaning, therefore, directly reveals the legislative intent to include within "the case of the * * * absence of any justice" that of a place left empty by the death of an absent justice during the period of vacancy, even though such death revives the appointive power of the President. Congress concededly intended that the place of a dying justice, totally incapacitated from attending the court in any manner whatsoever, shall be filled as provided by law and any construction to the effect that the moment such an absent justice dies his place can not be so filled, with the result that the court itself becomes incapacitated until his successor takes office, would be too narrow and technical as well as discreditable to Congress and frustrative of the broad purpose of the Act to the contrary. Nor does that construction grow out of the context expressly or by necessary implication. To hold that the death of an absent justice rendered him not absent is an absurdity. It is equally absurd to say that the absence of a dying justice ripens into his nonabsentation by his death. Nor have any two remaining justices on the death of the third for the past fifty years ever so ruled. In a comparable case, however, involving the question whether the office of an absent chief justice had become vacant through resignation, the supreme court constituted by the two associate justices and a duly authorized circuit judge in the place of the absent chief justice, avoided the question

but planted the suggestion that "absent" admits mutual substitution with "not existing" as applied to a justice after the effective date of his resignation, consistent with one of the definitions of the adjective "absent," and did so by employing the phrase "the absent or non-existing member of the court." (*Bush* v. *Rep. Haw.*, 12 Haw. 332 at 337.)

Bearing in mind that "it is a constitution we are expounding" in the light of the broad purpose and underlying public policy of the Act, the recent case of *Telefilm* v. *Superior Court,* 33 Calif. (2d) 289, 201 P. (2d) 811, decided January 21, 1949, is a most authoritative case on the use of the words "inability" and "absent" to convey legislative intent. It overruled the California District Court of Appeals in the case of the same title. (See 194 P. [2d] 542.) It is exceedingly persuasive because a proviso of a section of the Code of Civil Procedure as interpreted by the California supreme court is not only expressed in language comparable to that of the proviso of section 82, *supra,* but deals with a statutory authority to seek, and a statutory power of the court to grant, a new trial which "must be strictly pursued in the manner provided by law in order that litigants may not lose their rights." (*Telefilm* v. *Superior Court,* 33 Calif. [2d] 289, 201 P. [2d] 811, at pages 294 and 814, respectively.) Due to the importance of the case, the language of the entire section (Civ. Code § 661) is requoted from the court's opinion as follows: "The motion for a new trial shall be heard and determined by the judge who presided at the trial; provided, however, that in case of the *inability* of such judge or if at the time noticed for hearing thereon he is *absent* from the county where the trial was had, the same shall be heard and determined by any other judge of the same court. (Emphasis added.)" In an illuminating opinion, the supreme court of California interpreted

and applied the language of the proviso of that section of the code to the case of the death of the presiding judge before the time noticed for the hearing of the motion for a new trial which was heard and determined by another judge of the same court. It rejected the narrow view that the words "inability" and "absent" as used therein necessarily envisage application only "to a living person and do not include the concept of death of the trial judge as reason for another judge to act on the motion." (*Telefilm* v. *Superior Court, supra,* at pages 292 and 813, respectively.) Accordingly, it held that "The maxims of jurisprudence that 'interpretation must be reasonable' (Civ. Code, § 3542) and that a statute is to be 'liberally construed with a view to effect its objects and to promote justice' (Civ. Code, § 4) are generally applicable and must be given effect. Certainly the statute here in question should not be narrowly approached contrary to its spirit and intent, and construed in such a manner as would make its application impracticable, unfair, or unreasonable. In line with these considerations, the death of * * * the trial judge * * * was a circumstance within the contemplation of the statute as permitting * * * 'another judge of the same court' to hear and determine the motion for a new trial here involved, and his order in disposition thereof is not assailable as an act in excess of jurisdiction." (*Telefilm* v. *Superior Court, supra,* at pages 295 and 815, respectively.) This broad approach to the statute in question is summarized by the following judicial observation: "Manifestly a judge who has died is not only 'unable' to act but likewise is 'absent from the county' insofar as the statute contemplates his presence in court to determine litigation—in short, he is 'unavailable' on both grounds for the new trial proceedings." (*Telefilm* v. *Superior Court, supra,* at pages 293 and 814, respectively.) Under the doctrine of *stare decisis,* the principles of inter-

pretation enunciated in this *Telefilm* case as applied to the proviso of section 661, *supra,* operate as a strong precedent for applying them to the proviso of section 82, *supra,* particularly so when it is remembered that the application in the one is interpretative of a part of a legal code concerning a statutory authority and power to be strictly pursued after trial in order to protect private rights of litigants, and the other is explanatory of a part of a constitution concerning the exercise of judicial power by the highest body of one of the three co-ordinate branches of government to be liberally performed before trial in accordance with a broad purpose and underlying public policy to insure continuity of exercise for any power of government effecting the welfare of the people in general.

On superficial examination, the proviso of section 82, *supra,* however, is in apparent conflict with the preceding part of the section "That the supreme court shall consist of a chief justice and two associate justices who shall be citizens of the Territory of Hawaii and shall be appointed by the President * * * and may be removed by the President" in so far as such language implies that the court must so consist at all times in order to exercise the judicial power inclusive of trying and determining a particular pending cause before it. But any such implication is not a necessary one. The statement that "the supreme court shall consist of a chief justice and two associate justices" is a general provision declaratory of the normal organic structure of the court as to the presence of its regular members who enjoy the office of a justice and perform judicial duties ordinarily expected of them. Toward that statement the qualification of citizenship for those members and their appointment and removal are directed by the modifying clause further descriptive of them. On the other hand, the proviso that the place of "any justice * * * shall be filled as provided by law" is a special provision

concerning a departure from the normal organic structure of the court when one of its regular members is not present so as to try and determine a particular pending cause with the other two. It is in the nature of an exception and qualifies the generality of the preceding provision. The purport and intent for doing so is to provide a comprehensive and adequate basis for the disposition of a particular pending cause in case one of the regular members of the supreme court is absent, whether the cause of his absence be death or the happening of an equally significant event in life, affecting his continued performance of his judicial duties, such as his resignation, abandonment of office, removal or physical and mental incapacity. The evil to be remedied thereby is that of two horns of an abhorrent dilemma, one being complete stagnation of trial for pending causes and the other a monstrous possibility of determination on the trial thereof by a divided court occasioned by the availability therefor of but two justices.

On careful examination, the proviso is in no real conflict with the preceding general provision but actually harmonizes with it. The general provision contemplates the presence of all three of the regular members and their performance of all judicial duties. The proviso contemplates the presence of the majority thereof and a duly authorized person to sit with them in the absence of the minority to try and determine a particular pending cause, irrespective of the cause of such absence. Both are consequently in accord with the broad legislative purpose of the Act and uphold the strong public policy of a continuing exercise of judicial power for the common welfare of the people. Although the general provision in and of itself would operate consistently with the common-law principle to require the exercise of judicial power by the majority so that it shall never become dormant upon the death of the minority (see *The King* v. *Paakaula and*

*Kahauliko,* 3 Haw. 30; *State* v. *Lane,* 26 N. C. 340), the special proviso immediately following it operates to restrict such exercise and requires the place of an absent justice to be filled in order that a full court may try and determine any particular pending cause, the proviso ceasing to be operative on the reappearance of such justice or after his death on the appearance of his successor when taking office under presidential appointment. The proviso thereby guarantees the right of trial before a full court to the litigants of a pending cause and affords the ground for denying the first motion for a hearing of the motion to dismiss in that the appellees pray for a trial of a pending cause before less than a full court without having obtained the consent of the appellant.

The language of section 82 of the Act is plain and unambiguous and requires no judicial construction to determine and give effect to the intention of Congress. It manifests a clear legislative intent on the part of Congress that the place of any absent justice on the supreme court for the special purpose of the section shall be filled as provided by law so that then the court will be a full one and the judicial power of the Territory, as vested in that court, will be continuously exercised without regard to the cause of the absence. The dominant purpose is to insure a continuity of judicial process in the highest body of the judicial branch of government and nothing less will suffice. Such avowed intention and purpose patently transcends any evidence of contrary import to be derived from the mere inaction of the bench and bar in the past as well as from the positive expression of mind made by the president of the Republic of Hawaii on the general subject.

Section 9610 of Revised Laws of Hawaii 1945 as amended purports to implement section 82 of the Hawaiian Organic Act by providing the law under which the empty place of any justice shall be filled temporarily for the

special purpose of trial and determination of a particular pending cause. Purporting to do so, section 9610, *supra*, is in *para materia* with section 82, *supra*. A reasonable assumption therefrom is that it has the same legislative policy and was designed to give effect to the same broad purpose as those of the Act. It reads: "Full court; substitute justices. Parties to causes pending before the supreme court shall be entitled to a hearing before all the justices thereof, and may not be compelled to go to trial before less than the full number thereof; provided, however, that if any of the justices of the supreme court shall be disqualified from sitting in any cause pending before the supreme court, or shall be unable to attend from sickness, accident, absence, or any other reason, his or their place or places for the trial and determination of such cause shall be filled by one or more of the circuit judges * * * thereunto authorized by the written consent of the remaining justice or justices."

It is proper to note at this juncture that the legislature in section 9610, *supra*, enlarged the meaning of "any of the justices" over that of "any justice," as employed by Congress in section 82 of the Act to denote any one justice, and did so by implying that the phrase "any of the justices" means any one or more of them so that "his or their place or places * * * shall be filled by one or more of the circuit judges." But any question that the legislature thereby exceeded its delegated power is not before this court. Suffice it to say that the enactment of section 9610, *supra*, is valid and within the exercise of the power delegated by Congress to the legislature in so far as it provides, as it does, a method for filling temporarily the empty place on the supreme court of any one justice for the special purpose of trial and determination of a particular pending cause. To that extent, such legislative enactment does not conflict with the paramount law of

Congress as set forth in section 82 of the Act. It ratifies the right of trial before a full court in the case of absence guaranteed by the proviso of section 82 of the Act and provides for the replacing of an absent justice with a circuit judge within the authority of that proviso. It thereby complements the ground under such proviso for denying the first motion for a hearing of the motion to dismiss as a trial of a pending cause before less than a full court. However, it employs different language to describe the same case of "the * * * absence of any justice" from that which section 82 of the Act employs to designate it. Instead of saying "the * * * absence of any justice," it declares that "any of the justices of the supreme court * * * unable to attend," the connotation of which is the same as that of the absence of any justice within the meaning of section 82 of the Act. Nevertheless, by employing a phrase of the same import as that of "the * * * absence of any justice," it was apparently redundant for the legislature to use "absence" as one of the reasons causing a justice to be absent or unable to attend. But such redundancy does not vitiate the enactment or destroy its meaning. It is explicable on the theory that the noun "absence" was used by the legislature in a different sense to mean "a state of being absent or withdrawn from a place" on the supreme court or merely "withdrawn" therefrom. (See Webster's New International Dictionary, *supra.*) So interpreted, section 9610, *supra,* is reasonably susceptible of being paraphrased to read that if any justice be absent or unable to attend due to sickness or accident or because of being withdrawn or for any other reason, his empty place shall be filled as therein set out. On giving every word of the language of the section its ordinary and natural meaning as the context may require, the intent of the legislature is plain to provide effectively the law under which the place of an absent justice shall be

478

filled temporarily for the special purpose of trial and determination of a particular pending cause so as to include a place left empty by the death of an absent justice during the period of vacancy. This intention is in harmony with that of Congress and consonant to the broad purpose and underlying public policy of the Hawaiian Organic Act as well as consistent with the legislative purpose of deeming "The supreme court * * * to be continuously in session" as provided elsewhere by statute. (R. L. H. 1945, § 9607.) Thus the plain and unambiguous provisions of section 82, *supra,* and of section 9610, *supra,* on a bare reading thereof in *para materia* to each other answer the question presented in the affirmative.

The alternative motion to hear the motion to dismiss as a pending cause to be tried before the supreme court as presently constituted but after being augmented by a duly authorized circuit judge in place of the absent justice who has died in office and whose successor has not taken office to date, in my opinion, should be granted. I, therefore, respectfully dissent from the opinion of the chief justice to the contrary.